UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MANUEL WILLIAMS,

                Plaintiff,

v.

CYNTHIA THORPE and
DR. SALIENE,[1]

                Defendants.

Case No. 08-CV-577-JPS

ORDER

---

The plaintiff, Manuel Williams, a Wisconsin state prisoner, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and, after his petition for leave to proceed *in forma pauperis* was denied under 28 U.S.C. § 1915(g), paid the full filing fee. He is proceeding on an Eighth Amendment deliberate indifference to a serious medical need claim and Wisconsin state law medical malpractice and negligence claims based on the allegations set forth in the April 17, 2009 amended complaint. Before the court are the defendants' motion for summary judgment and the plaintiff's motion for summary judgment.

STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that

---

[1] Dr. Saliene is identified as Dr. Suliene in the defendants' motion for summary judgment.

"might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

FACTUAL BACKGROUND[2]

On November 30, 2010, the parties stipulated to the dismissal of defendant Richard Heidorn, M.D., and all claims against him, which included an Eighth Amendment deliberate indifference to a serious medical need claim and a Fourteenth Amendment equal protection claim. The plaintiff's Eighth Amendment medical care and state law claims against Cynthia Thorpe and Dr. Suliene remain. The plaintiff alleges that, in the course of treating him for gastroesophageal reflux disorder, tonsil problems, hypoplastic sinus, spinal pain, and urination problems, Dr. Suliene denied

---

[2] Facts are taken from the defendants' proposed findings of fact and the plaintiff's proposed findings of fact. Relevant facts are included in this section to the extent they comply with Federal Rule of Civil Procedure 56.

him medically prescribed treatment and medication resulting in suffering and pain, and, in other instances, ignored his complaints of pain. He also alleges that defendant Thorpe condoned Dr. Suliene's treatment.

I.  GREEN BAY CORRECTIONAL INSTITUTION

The plaintiff was incarcerated at Green Bay Correctional Institution (GBCI) from March 20, 2006, to February 14, 2008, where former defendant Dr. Heidorn is employed as a physician. Upon arrival at GBCI, the plaintiff reported that he had no history of allergies, that he had medication for gastroesophageal reflux disorder (GERD), that he had orders for an inhaler and was on an asthma care plan, and that he had been treated for H. Pylori (stomach bacteria) in November 2005.

During the plaintiff's nearly two-year detention at GBCI, he had at least forty-one nursing encounters, with the majority of these having a full set of vital signs checked. Former defendant Dr. Heidorn also saw him multiple times. The plaintiff's body weight upon admission to GBCI was 175 pounds and his weight fluctuated between 166 to 184 pounds during his detention there. He was found to be allergic to onions, tomatoes, lemons, grapefruit, and chocolate. Dr. Heidorn treated the plaintiff for a food/mucous plug in his tonsillar crypt, by ordering him to gargle with saline and later with Paradox and salt water. The plaintiff was referred to the University of Wisconsin Hospital on November 14, 2006, for a barium enema and, on November 17, 2006, for an upper gastrointestinal endoscopy. The latter test showed that the plaintiff has mild GERD, also known as heartburn.

II.  COLUMBIA CORRECTIONAL INSTITUTION

On February 14, 2008, the plaintiff was transferred to Columbia Correctional Institution (CCI). His medical chart was screened and reviewed,

-3-
Case 2:08-cv-00577-JPS   Filed 09/13/11   Page 3 of 15   Document 91

his current medications were re-issued, and a modified diet order was written for his food allergies.

On March 14, 2008, Dr. Suliene saw the plaintiff for complaints of kidney pain and halitosis (bad breath). She ordered a urinalysis and prescribed Piroxicam for his back pain. Before Dr. Suliene completed her examination, the plaintiff became disruptive and threatened staff. This appointment was re-scheduled. On March 25, 2008, the plaintiff's urinalysis came back negative for everything.

On March 20, 2008, the plaintiff was seen for complaints concerning his esophagus and throwing up food which he stated had been occurring for four years. The plaintiff had been taking Omeprazole for heartburn and acid reflux, but he stated it did not help. He refused the Piroxicam Dr. Suliene ordered for his back pain, so she discontinued that medication. Dr. Suliene ordered an upper gastrointestinal endoscopy at the University of Wisconsin Hospital.

On March 24, 2008, the plaintiff was seen by HSU staff for complaints of sore tonsils. He had some swelling of his lymph nodes and was instructed to gargle with salt water.

On April 24, 2008, Dr. Suliene saw the plaintiff regarding his continued regurgitation of food. She reviewed the lumbar spine X-rays previously taken which showed mild disc space narrowing. Dr. Suliene prescribed Tylenol for mild back discomfort. The plaintiff's weight was 166 pounds, and she ordered his weight to be checked monthly for four months.

On May 5, 2008, the plaintiff refused his HSU appointment. On May 12, 2008, he was to be seen by HSU staff, but was at a court appearance.

On May 27, 2008, the plaintiff was seen by HSU staff for complaints concerning his GERD. He claimed that his Omeprazole prescription was not helping, and was provided with Maalox as an alternative.

On June 16, 2008, the plaintiff underwent his upper gastrointestinal endoscopy at the University of Wisconsin Hospital. The report showed the plaintiff had mild GERD; otherwise, the results were normal.

On July 3, 2008, Dr. Suliene saw the plaintiff for continued follow up and he reported he was still regurgitating his food. Dr. Suliene discontinued his Omeprazole and prescribed Metoclopropamide before each meal. She also continued his order for antacid tablets for heartburn as needed. The plaintiff was also still being monitored for any weight changes and his weight was 164 pounds.

On July 11, 2008, the plaintiff refused his HSU appointment. On July 16, 2008, the plaintiff was seen by HSU staff for heartburn. He reported he was not vomiting, no changes with his appetite, and that his treatment was ineffective.

On August 5, 2008, the plaintiff was seen by HSU staff for complaints of asthma problems. He stated he was doing okay at this appointment, but was noticing that his symptoms were increasing. The plaintiff was provided with a new inhaler and directed to notify HSU if there was no improvement.

On September 12, 2008, the plaintiff was seen by HSU for complaints of constipation. Dr. Suliene was consulted and ordered Docusate for his constipation.

On October 9, 2008, the plaintiff was seen for complaints that his sinuses were plugged, and that he had watery eyes and a headache. Dr. Suliene prescribed Nasacort nasal spray, chlorpheniramine three times a day, and issued him a neti pot (a device used for irrigating the nasal passages).

She also ordered sinus X-rays, which did not show the plaintiff had a hypoplastic (underdeveloped) right frontal sinus. Dr. Suliene opined that no additional medical treatment was necessary.

On October 29, 2008, the plaintiff was seen by HSU staff for complaints of sinus and asthma problems. He stated he had just opened a new inhaler. The plaintiff was advised that he would be placed on the physician's schedule and to inform HSU if symptoms increased prior to his appointment. On November 12, 2008, Dr. Suliene saw the plaintiff for follow up of his sinus and asthma problems reported on October 29, 2008. He reported having no problems with these concerns at this appointment. Dr. Suliene renewed the plaintiff's Albuterol inhaler prescription on November 28, 2008.

On December 5, 2008, the plaintiff was seen by HSU staff due to his allergies acting up. He was instructed to continue to use his nasal spray. On December 22, 2008, the plaintiff was seen by HSU staff for complaints of tightness in his throat, but reported he was not having any breathing problems. On December 28, 2008, Dr. Suliene discontinued the plaintiff's saline nasal spray and saline gargle as he was not using them. Dr. Suliene reordered his Nasacort nasal spray and Metamucil. She also ordered Genaton (antacid tablets). On December 29, 2008, Dr. Suliene renewed the plaintiff's Chlorpheniramine for his allergies.

On January 8, 2009, Dr. Suliene saw the plaintiff for follow up on his asthma. He requested a steroid inhaler stating that he used one during his childhood. Dr. Suliene prescribed Doxycycline and Qvar (steroid inhaler). On January 26, 2009, the plaintiff was seen by HSU staff for complaints that his inhalers were not working well. He was educated on how to

appropriately use them and was "okay" with this. He was placed on the physician's schedule for follow up.

On February 5, 2009, Dr. Suliene saw the plaintiff with complaints of tightness in his throat, but he reported no new symptoms. The plan was to continue his current treatment.

On February 23, 2009, the plaintiff provided a urinalysis to be screened for blood in his urine and, on February 25, 2009, the results came back negative. On February 27, 2009, the plaintiff was seen by HSU staff for complaints of chest discomfort, but was pretty sure it was muscular as he stated his asthma was okay. He also complained of H. Pylori, which was discussed with Dr. Suliene and she ordered a test for H. Pylori.

On March 5, 2009, Dr. Suliene saw the plaintiff for follow up. His H. Pylori test came back negative and his weight was 165.8 lbs. The plaintiff reported still having tightness in his chest but, again, was pretty sure it was muscular. There was no change in his treatment at that time. On March 8, 2009, Dr. Suliene saw the plaintiff for follow up. He raised a complaint of having a history of blood in his urine. Dr. Suliene discussed the negative results of his urinalysis taken on February 23, 2009. Based on the negative urinalysis, she determined that there was no need to change his treatment plan. On March 11, 2009, Dr. Suliene renewed the plaintiff's Nasacort nasal spray and Docusate.

### III. DEFENDANT CYNTHIA THORPE

Defendant Thorpe is a nursing coordinator for the Wisconsin Department of Corrections' Bureau of Health Services (BHS), and she is a licensed registered nurse. The BHS oversees the provision of health care services for inmates incarcerated in Wisconsin prisons. As nursing coordinator, Thorpe is responsible for the coordination and oversight of

-7-

Case 2:08-cv-00577-JPS    Filed 09/13/11    Page 7 of 15    Document 91

health services provided at adult facilities. She consults with institution and other management staff regarding professional practice issues. Thorpe's duties as nursing coordinator do not include personally treating inmate patients or personally supervising their care.

In the course of her duties as nursing coordinator, Thorpe also functions as the appropriate reviewing authority for offender complaints filed under the Inmate Complaint Review System (ICRS). Wis. Adm. Code §§ DOC 310.03(2), DOC 310.12. She receives written recommendations from the institution complaint examiner (ICE), along with a copy of the offender complaint file. Wis. Admin. Code § DOC 310.12. Thorpe then reviews the recommendation and offender complaint file, and makes a decision on the offender complaint. Wis. Admin. Code § DOC 310.12(2). Thorpe's role is to review complaints about medical care, make a decision about the complaint as the reviewing authority for medical complaints at designated facilities, and, if appropriate, refer the complaint to the health care provider's supervisor for evaluation.

In the course of Thorpe's review of numerous ICRS offender complaints the plaintiff filed within the relevant time period and related to the subject matter of this action, she examined the complaints themselves and the ICE recommendations. Thorpe also had available to her and relied on relevant medical records. For each of the offender complaints, Thorpe agreed with the ICE's recommendation of dismissal because, based upon the medical record and the information she obtained from both GBCI and CCI, the medical records documented that the plaintiff was being regularly seen and thoroughly evaluated by Dr. Heidorn and Dr. Suliene. Thorpe concluded that the plaintiff's concerns were being adequately addressed by both physicians but that he simply disagreed with each of their treatment plans.

-8-

At no time did Thorpe have any direct contact with the plaintiff, nor did she have any personal involvement with the medical care given to him.

ANALYSIS

I. EIGHTH AMENDMENT CLAIM

    A. Defendant Dr. Suliene

The defendants contend that the plaintiff cannot maintain a deliberate indifference claim against Dr. Suliene. According to the defendants, Dr. Suliene applied her medical judgment and provided the plaintiff continued care and treatment over several months. For the purposes of summary judgment, the defendants stipulate that the plaintiff's GERD is a serious medical need, but they contend that the condition was appropriately treated. They also assert that: Dr. Suliene did not treat the plaintiff for any problems related to his tonsils as this condition was treated at GBCI by Dr. Heidorn; the plaintiff's sinus problems are not a serious medical need and Dr. Suliene was not deliberately indifferent to his sinus issues; the plaintiff's spinal pain was not a serious medical need and he was provided appropriate treatment for his concerns; and the plaintiff's complaints of urine problems do not constitute a serious medical need and Dr. Suliene appropriately treated those complaints.

The plaintiff contends he is entitled to summary judgment on his claims that Dr. Suliene was deliberately indifferent to his GERD, back pain, hypoplastic sinus, and tonsillar crypt.[3] According to the plaintiff, although Dr. Suliene treated him for his GERD, she prescribed him ineffective medications and he told her the medications were not working. He also

---

[3] In his motion for summary judgment, the plaintiff states that he will not be addressing his urine claims.

asserts that Dr. Suliene was aware of his tonsil condition and resulting pain in his ears, but that she simply renewed the mouthwash previously prescribed by Dr. Heidorn. The plaintiff further asserts that Dr. Suliene was aware of his back pain and prescribed Tylenol for the pain, even after he made it clear that the Tylenol was not helping his lower back pain.

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Although negligence or inadvertence will not support a deliberate indifference claim, a prisoner need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002)). "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* (quoting *Greeno*, 414 F.3d at 653).

"A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe*, 631 F.3d at 857 (quoting *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008)). A medical professional acting in her professional

capacity may be held to have exhibited deliberate indifference "only if the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* (quoting *Sain*, 512 F.3d at 895). Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830-31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir.1996)).

In this case, it is undisputed that between February 14, 2008, and March 11, 2009, CCI medical staff saw the plaintiff at least twenty-two times and Dr. Suliene saw him ten times personally. Dr. Suliene performed a series of examinations, laboratory and other diagnostic tests, prescribed medications, and approved a specialist appointment at the University of Wisconsin Hospital.

The record shows that, to treat the plaintiff's GERD, on March 20, 2008, Dr. Suliene ordered an upper gastrointestinal endoscopy at the University of Wisconsin Hospital which showed he had mild GERD. Dr. Suliene prescribed Omeprozple to treat the plaintiff's condition and then when he complained that the medication was not helping, she discontinued it and prescribed Metoclopropamide. She also ordered antacid tablets for the plaintiff.

With regard to the plaintiff's back pain, the undisputed facts show that on March 14, 2008, Dr. Suliene prescribed Piroximcam after he complained of pain in his kidney. However, she discontinued that medication six days later because he refused it. Dr. Suliene saw the plaintiff on April 24, 2008, and evaluated an x-ray of his spine which was normal except for mild disc space narrowing. Based on that record, she prescribed Tylenol, which was recommended for mild back discomfort.

It is undisputed that Dr. Suliene did not have involvement in treating the plaintiff for his tonsils. Former defendant Dr. Heidorn treated the condition when the plaintiff was at GBCI. Although Dr. Suliene did reissue a saline mouthwash prescription to treat his bad breath caused by the tonsil crypts, she later canceled the gargle because he was not using it.

Finally, it is undisputed that Dr. Suliene ordered an x-ray of the plaintiff's sinus. The x-ray was unremarkable and did not show a hypoplastic right frontal sinus. It is also undisputed that, in additional to ordering an x-ray, Dr. Suliene prescribed Nasacort nasal spray and chlorpheniramine, gave the plaintiff a neti pot to irrigate his nasal passages, and followed up with his sinus condition.

A plaintiff alleging deliberate indifference who has received some medical care addressing his health care needs must show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to aggravate plaintiff's serious medical condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996). However, there is no indication that Dr. Suliene's treatment was "blatantly inappropriate," likely to aggravate the plaintiff's conditions, or a substantial departure from accepted professional judgment. Rather, the undisputed facts demonstrate that this is a classic case of the plaintiff disagreeing with a medical

professional's course of treatment, for which there is no liability under the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). As such, Dr. Suliene is entitled to summary judgment on the plaintiff's Eighth Amendment claim.

      B.      Defendant Cynthia Thorpe

The defendants contend that the plaintiff's claims against defendant Thorpe should be dismissed because she was not personally involved in the plaintiff's health care and exercised her reviewing authority duties diligently, and because the claims are, in essence, an argument for liability based upon a theory of *respondeat superior*. The plaintiff contends that Thorpe condoned Dr. Suliene's medical treatment, that she could have stopped the medical treatment, but that she did not.

As an initial matter, the court's finding that Dr. Suliene is entitled to summary judgment on the plaintiff's Eighth Amendment medical care claim precludes a finding of liability as to defendant Thorpe for condoning the treatment. In any event, it is undisputed that Thorpe had no personal involvement in the plaintiff's medical care and § 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (government officials may not be held liable under § 1983 for unconstitutional conduct of their subordinates under theory of respondeat superior).

II.     STATE LAW CLAIMS

The general common law duty of jail and prison officials to provide appropriate medical care for prisoners is reflected in the American Law Institute's Restatement of the Law of Torts. *See* Restatement (Second) of

-13-

Torts § 314A(4) (1965).[4] *Taylor v. Wausau Underwriters Co.*, 423 F. Supp. 2d 882, 886-87 (E.D. Wis. 2006). At common law, a jailer's negligence in providing such care gives rise to liability to the prisoner for any resulting loss. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 514 N.W.2d 48, 50 (1994). Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort*, 227 Wis. 2d 124, 149, 595 N.W.2d 423, 435 (1999); *Schuster v. Altenberg*, 144 Wis. 2d 223, 229, 424 N.W.2d 159, 161-62 (1988). Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp*, 2001 WI 42 ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (2001). Thus, to establish a prima facie medical negligence claim, the plaintiff must show that Dr. Suliene failed to use the required degree of skill exercised by an average doctor, that he was harmed, and that there is a causal connection between Dr. Suliene's failure and the plaintiff's harm. Wis. J-I Civil 1023.

Moreover, unless the situation is one in which common knowledge affords a basis for finding negligence, medical malpractice cases require expert testimony to establish the standard of care. *Wade v. Castillo*, 658 F. Supp. 2d 906 (W.D. 2009) (citing *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118 ¶ 35, 284 Wis. 2d 56, 699 N.W.2d 524 (2005)). The plaintiff's situation is not one in which the common knowledge of lay persons affords

---

[4] Restatement (Second) of Torts § 314A describes the duty that a common carrier owes to its passengers. With respect to the duty of a jailer or prison guard, subsection (4) states: "One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other."

a basis for finding negligence. Moreover, the undisputed facts do not support a finding that Dr. Suliene failed to use the required degree of skill exercised by an average doctor. Thus, the defendants' motion for summary judgment as to the plaintiff's state law claims will be granted. Accordingly,

IT IS ORDERED that the plaintiff's motion for summary judgment (Docket #80) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Docket #72) be and the same is hereby GRANTED and this action DISMISSED on its merits together with costs as taxed by the Clerk of the Court; and

IT IS FURTHER ORDERED that the plaintiff's motion to strike defendants' reply brief (Docket #90) be and the same is hereby DENIED.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2011.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge